UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EXPEDITEE, LLC, | : | Case No.: 1:21-cv-6440 |
| | : | |
| Plaintiff, | : | **PLAINTIFF EXPEDITEE LLC'S** |
| | : | **RESEPONSE TO OPENCOMMERCE** |
| vs. | : | **GROUP, INC.'S MOTION TO** |
| | : | **MODIFY DEFAULT JUDGMENT** |
| THE ENTITIES listed on EXHIBIT 1, | : | **ORDER** |
| | : | |
| Defendants. | : | Honorable Charles P. Kocoras |
| | : | |

Plaintiff Expeditee, LLC ("Plaintiff") hereby submits this response to OpenCommerce Group, Inc.'s ("OpenCommerce") Motion to Modify Default Judgment Order ("Motion"). In support of its response to the Motion, Plaintiff states as follows:

### I.   INTRODUCTION

On December 2, 2021, Plaintiff filed a complaint before this Court to address the rampant trademark infringement and counterfeiting occurring on several online platforms. Since that time, at great expense in both time and money, Plaintiff has diligently and fairly prosecuted this case. Namely, Plaintiff took every reasonable precaution and properly relied on the information provided by PayPal (and other third-party payment platforms) to ensure that all Defaulting Defendants were properly identified, notified, and given a chance to appear in this action. In the end, this Court granted Plaintiff's Motion for Default Judgment and awarded Plaintiff relief in the form of a monetary award of up to $350,000 per Defaulting Defendant. *See* Dkt. 87, 88 ("Order"). Plaintiff served the relevant third-party payment platforms with the Court's Order granting relief and the Order was or is currently being implemented by such third-party platforms.

It is only now, *fourteen months* after this action was initiated and two months after the Court granted Plaintiff's requested relief, that OpenCommerce appears to complain that their

"PayPal accounts" should not be subject to this Court's Order granting default judgment. OpenCommerce does not, however, provide any documentation demonstrating why the subject accounts should be relieved from the Order. Nor does it provide even enough information to properly identify the accounts in question, and the information it does provide is insufficient, inaccurate, or entirely inapplicable. Instead of providing the appropriate information to prove its claim, OpenCommerce attempts to point the finger at Plaintiff, asserting that Plaintiff had misapplied the Court's Order and should voluntarily abstain from collecting its Court ordered relief, based solely on the self-serving statements of OpenCommerce's counsel and CEO.

## II. RELEVANT FACTS

### A. Procedural Posture and Early Discovery

On December 2, 2021, Plaintiff filed its Complaint for trademark infringement and counterfeiting against the Entities listed in Exhibit 1 ("Defendants") thereto. On December 3, 2021, the Court issued a Minute Order, granting, among other relief, expedited discovery and service of process by email. *See* Dkt. 13; *see also* Dkt 14 (stating, "Plaintiff is given leave to conduct expedited discovery and serve defendants by electronic mail."). Plaintiff propounded discovery requests on several third-party payment platforms that were servicing financial accounts associated with Defendants and being used in connection with Plaintiff's claims ("Defendant Accounts"). As a result of such discovery requests, third-party PayPal, Inc. ("PayPal") provided Plaintiff with a summary of Defendant Accounts ("Account List 1", *see* Declaration of Marie Richmond ("Richmond Decl."), ¶3; *see also* Exhibit A) and specific account details ("Account Detail 1") for each Defendant Account. Account List 1 includes, among other things, the PayPal account number for each of the Defendant Accounts and links each Defendant Account to a named defendant. *Id.* Among the Defendant Accounts, are account numbers 19\*\*\*\*\*\*\*\*\*\*\*\*\*\*193 (the "'193 Account") and 20\*\*\*\*\*\*\*\*\*\*\*\*\*\*736 (the "'736 Account", collectively, the "Accused

Accounts")[1]. *Id.*

Account Detail 1 for the '193 Account demonstrates that the primary email address associated with the account is billing@printbase.co. *See* Richmond Decl., ¶4; *see also* Exhibit B. Account List 1 indicates that the '193 Account is linked to Defaulting Defendant "customeizer". *See* Exhibit A; *see also* Dkt. 85-1, line 49.

Account Detail 1 for the '736 Account demonstrates that the primary email address associated with the account is paypal.us.ocg@beeketing and the alternate email address billing@printbase.co (collectively, the "Accused Email Addresses"). *See* Richmond Decl., ¶4; *see also* Exhibit C. Account List 1 identified the entity "quietwater" as being associated with the '736 Account. *See* Exhibit A. Discovery produced by PayPal in a separate, concurrent case, *Expeditee, LLC v. The Entities listed on Exhibit 1*, civil case no. 21-cv-06237, linked the '736 Account to a defendant in the instant action, "darkhorsedesiegns"[2]. *See* Richmond Decl., ¶5, *see also* Exhibit C; *see also* Dkt. 85-1, line 50.

**B.      Plaintiff's Notice of Proceedings to Defaulting Defendants**

Neither defendant customeizer nor darkhorsedesigns filed an answer or otherwise appeared in this action. *See* Dkt. 85; 85-1, lines 49-50. On June 1, 2022, Plaintiff filed a motion for default and default judgment ("Motion for Default Judgment"). *See* Dkt. 69. Plaintiff undertook substantial efforts to notify the Defaulting Defendants, including defendants customeizer and darkhorsedesigns, of Plaintiff's Motion for Default Judgement and the events related thereto. *See* Dkts. 85, 85-1, lines 49-50 (stating that Defaulting Defendants customeizer and darkhorsedesigns were served with Plaintiff's Motion for Default Judgment on June 1, 2022); *see also* Richmond Decl., ¶6; Exhibit E, true and correct copies of emails sent to Defaulting Defendants concerning

---

[1] Plaintiff notes that because OpenCommerce did not provide any identifying information concerning the accounts in question, it must rely on OpenCommerce's statements via email to attempt to identify the accounts at issue in Open Commerce's Motion.

[2] It is not uncommon for ecommerce Defendants to have multiple seller aliases, such seller aliases are generally linked by one common account and/or email address, discussed in further detail, infra.

RESPONSE TO MOTION TO
MODIFY DEFAULT JUDGMENT ORDER
Case No.: 1:21-cv-6440

3

the instant action, including to the Accused Email Addresses on June 1, 2022, June 2, 2022, June 15, 2022, and November 9, 2022.

C.   **Default Judgment Order and Communications with Third-Party PayPal**

On November 18, 2022, this Court issued an order granting default judgment, awarding to Plaintiff, among other relief, "statutory damages from each of the Defaulting Defendants in the amount of three hundred fifty thousand dollars ($350,000) for willful use of counterfeit Asserted Marks in connection with the sale of products through at least the Defaulting Defendants' Online Marketplaces."  *See* Dkt. 88, ¶4.

On November 21, 2022, Plaintiff sent notice of the Order to PayPal.  *See* Decl. Richmond, ¶7; *see also* Exhibit F.  PayPal requested a list of email addresses associated with the Defaulting Defendants' accounts.  Richmond Decl., ¶8; *see also* Exhibit G.  On November 30, 2022, Plaintiff provided the requested information to PayPal.  *Id*.  On December 1, 2022, PayPal provided Plaintiff with a second list of accounts ("Account List 2"; *see* Richmond Decl., ¶8; *see also* Exhibit H) and a second set of specific account details ("Account Detail 2").

Account List 2 shows that the '193 Account – the account linked by PayPal to Defaulting Defendant customeizer – is associated with the Accused Email Address billing@printbase.co.  *See* Richmond Decl., ¶9*; see also* Exhibit H.  Account Detail 2 also shows that as of December 1, 2022, the '193 Account had a balance of $16,091.35 USD and $16,468.93 including all currencies.  *See* Richmond Decl., ¶9; *see also* Exhibit I.  Further, the Accused Email Address billing@printbase.co is listed as the primary email address.  *Id*.  Plaintiff sent multiple notifications regarding the case, default and motion for default judgment to this email address but never got any response.  Dkts. 28, 85; *see also* Exhibit E.

Account List 2 shows that the '736 account – the account linked by PayPal to Defaulting Defendant darkhorsedesigns – is associated with Accused Email Address paypal.us.ocg@beeketing.com.  *See* Exhibit H.  Account Detail 2 shows that as of December 1, 2022, the '736 Account had balance of $692,670.45 USD, and a total balance of $799,101.14, including all currencies.  *See* Richmond Decl., ¶10; *see also* Exhibit J.  Further, the Accused Email

Address paypal.us.ocg@beeketing.com is listed as the primary email address and the Accused Email Address billing@printbase.co is listed as the secondary email address. *Id.* Plaintiff sent multiple notifications regarding the case, default and motion for default judgment to these email addresses but never got any response. Dkts. 28, 85; *see also* Exhibit E.

D.  **Plaintiff's Communications with OpenCommerce**

On December 5, 2022, counsel for OpenCommerce contacted Plaintiff concerning a freeze on its PayPal accounts. *See* Richmond Decl., ¶11; *see also* Exhibit K. OpenCommerce did not provide any relevant account information to Plaintiff in this communication, but a review of communications with Plaintiff's former counsel dated December 4, 2022, reveals that OpenCommerce stated that the accounts in question are connected to the Accused Email Addresses.[3] *Id.* On December 6, Plaintiff responded to OpenCommerce and stated that it appeared that one of the accounts was associated with Defaulting Defendant "darkhorsedesigns". Plaintiff also stated, "If you believe this is in error, please provide documentation to demonstrate why the account in question should be released." *See* Richmond Decl., ¶12; *see also* Exhibit L.

On December 13, 2022, OpenCommerce provided Plaintiff with communications between Plaintiff's former counsel and OpenCommerce that took place in 2021, and what appears to be some type of account detail for an account called "Darkhorsedesigns" ("DHD2"), which is connected to the email address tungadv0706@gmail.com. *See* Dkt. 90-1, pp. 7-8; *Id.,* p.23. OpenCommerce did not provide any evidence concerning the account transactions for the DHD2 account, namely, dollar amount of sales, or state that it took steps to freeze the funds in such account when it learned of the instant action. *See* Richmond Decl., ¶13. Nor did OpenCommerce provide any documentation to demonstrate that the '193 and '736 Accounts identified to Plaintiff by PayPal are not associated with any of the Defaulting Defendants. *Id.*

Plaintiff has conducted a diligent review of its records and is unable to locate any documentation that would demonstrate that the '736 and '193 Accounts, the accounts linked to

---

[3] OpenCommerce initially contacted Plaintiff's former counsel who no longer represents Plaintiff in this action. *See* Exhibit K.

Defaulting Defendants darkhorsedesigns and customeizer, are not associated with the Accused Email Addresses. *See* Richmond Decl., ¶14. Nor was Plaintiff able to identify any other Defendant Accounts associated with the Accused Email Addresses. *Id.*

Since the initial communication, OpenCommerce contacted Plaintiff on an almost daily basis by phone and email, demanding that its accounts be released, but has not provided any additional evidence to demonstrate an error in the Order and/or implementation of the same. *See* Richmond Decl., ¶15.

### III.  ARGUMENT

OpenCommerce has not provided any evidence to demonstrate that the '193 and '736 are not associated with Defaulting Defendants darkhorsedesigns or customeizer. To the contrary, OpenCommerce admits that, at the time this case was filed, it was associated with Defaulting Defendant darkhorsedesigns and controlled the funds from darkhorsedesigns' infringing sales. *See* Dkt. 90 at 4. OpenCommerce also exerted control over the infringing darkhorsedesigns website, stating that it disabled the website after it received notice of the TRO. *Id.* ("As soon as OpenCommerce learned of this lawsuit and the claims against this seller, it immediately disabled DarkHorseDesigns' website"). OpenCommerce attempts to downplay its involvement in the infringing activity, but its statement that infringing sales were limited to only one named defendant store are clearly false. The only information provided by OpenCommerce is so vague and/or inconsistent that it cannot provide a basis for this Court to grant relief. Additionally, because the Order is predicated upon documentation provided by PayPal, rather than continue to harass Plaintiff, it is OpenCommerce's responsibility to proactively contact PayPal to obtain the records that would provide a basis for this Court to grant relief. OpenCommerce has failed to do so.

**A. OpenCommerce Fails to Demonstrate How Federal Rule 60 is the Appropriate Basis for Bringing Its Motion**

As a preliminary matter, OpenCommerce cites Rule 60(b)(6) as the basis for its Motion. *See* Dkt. 90, p.2. Rule 60, however, provides a basis to "relieve a party or a party's legal representative from a final judgment, order, or proceeding . . .". OpenCommerce is not a party to

this action. *See* Dkt. 90, p.2. And OpenCommerce does not provide any case law or argument to demonstrate why Rule 60(b)(6) is applicable where a **non-party** seeks relief from an order. *See id*. Accordingly, OpenCommerce fails to demonstrate standing or the existence of a Rule that would provide the basis for the relief sought.

**B. OpenCommerce is Not Immune Under the Communications Decency Act**

OpenCommerce's claim that it is immune from any liability for Defaulting Defendants' trademark infringement under the Communications Decency Act of 1996 ("CDA") is false. *See* Dkt. 90 at 6. By its express terms, the CDA clearly states that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property." 47 U.S.C.A. § 230(e)(2). Since a trademark is clearly a type of "intellectual property," CDA statutory immunity does not shield such claims. Moreover, all courts agree that a claim under federal law for trademark infringement is an intellectual property claim not precluded by the CDA. *See, e.g., Hepp v. Facebook,* 14 F.4th 204, 212 (3d Cir. 2021) ("[W]e hold that § 230(e)(2) is not limited to federal laws. Simply put, a state law can be a 'law pertaining to intellectual property,' too…. [W]e hold that Hepp's statutory claim against Facebook arises out of a law pertaining to intellectual property. For that reason, the § 230(e)(2) limit applies, and Facebook is not immune under § 230(c)."); *Perfect 10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1118 (9th Cir. 2007)*; Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1322 (11th Cir. 2006); *Gucci America, Inc. v. Hall & Associates*, 135 F. Supp. 2d 409 (S.D. N.Y. 2001)*; see also Chicago Lawyers' Committee for Civil Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F.3d 666 (7th Cir. 2008) (holding claim against a message board operator for dilution under state trademark law was based on intellectual property laws and not subject to 47 U.S.C.A. § 230 immunity)*.*

**C. Defendants Actively Attempt to Conceal Their True Identities to Escape Liability Requiring Plaintiffs to Rely on Third-Party Records to Prove Their Cases**

Defendants in cases of this nature intentionally conceal their identities and the full scope of their counterfeiting operations to deter plaintiffs from learning defendants' true identities and

the exact interworking of defendants' illegal counterfeiting operations. Defendants often use multiple fictitious names and addresses to register and operate the Infringing Webstores. Upon information and belief, Defendants regularly create new Websites and Webstores on various platforms using the identities listed in the Third Revised Exhibit A (Dkt. 85) as well as other unknown fictitious names and addresses. Such registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their illegal counterfeiting operations, and to prevent the Infringing Webstores from being disabled.

Generally, the only way to link a specific defendant to a third-party financial account is via the email address and/or account number associated with such account. This pattern of identity concealment is evident in the current fact pattern. Specifically, ***PayPal's records unquestionably link Defaulting Defendant darkhorsedesigns to the '736 Account***, which lists both Accused Email Addresses in the Account Detail records. *See* Exhibits C, D, J. PayPal's records also indicate that the '736 Account is linked to an entity identified as quietwater. This is a clear example of a savvy defendant employing multiple fictious names and/or Webstores to avoid liability.

In addition to intentional identity concealment, a general lack of transparency is also at play because payment platforms will not release sensitive or otherwise identifying personal information without cause. These sensible safeguards protect account owners and their assets, but coupled with defendants' tactics, require plaintiffs and courts to rely on court-ordered, third-party document production to identify infringing defendants.

The Court in this action recognized these issues when it granted Plaintiff's *ex parte* motion for, among other things, expedited discovery. Dkt. 13; *see also* Dkt 14 (stating, "Plaintiff is given leave to conduct expedited discovery and serve defendants by electronic mail."); *see also* Dkt. 14, ¶2 (recognizing the "great lengths Defendants undertake to hide their true identities."). Plaintiff therefore relied on Account Lists 1 and 2, and the relevant Account Details provided by PayPal to link Defaulting Defendant darkhorsedesigns to the '736 Account and both Accused Email Addresses. *See* Exhibits C, D, J. The PayPal records also link Defaulting Defendant customeizer

to the '193 Account and the Accused Email Address billing@printbase.co. *See* Exhibits A, B, I. There is no evidence whatsoever to indicate that these Defaulting Defendants are not the owners of the identified accounts and/or the Accused Email Addresses.

For its part, OpenCommerce does not provide any documentary evidence to call the PayPal records into question and fails to recognize that Plaintiff does not have unfettered access to such records. Further, OpenCommerce did not reach out to PayPal, the custodian of the relevant records, until sometime in January 2023, over six months after it was notified of Plaintiff's Motion for Default Judgment, and over a month after is purports its accounts to have been frozen. *See* Dkt. 90-1, ¶23; *id.*, ¶16; *see also* Exhibit E. OpenCommerce provides no explanation for its delay.

Moreover, OpenCommerce falsely claims that only one of the Defaulting Defendants (darkhorsedesigns) is associated with the OpenCommerce platform. However, PayPal has clearly identified that Defaulting Defendant customeizer is also associated with the frozen accounts complained of by OpenCommerce.

Accordingly, it would be unreasonable and unfair to now punish Plaintiff for following the proper procedure to identify, notify, and secure a judgement against Defaulting Defendants by granting OpenCommerce's requested relief, solely based on OpenCommerce's exceedingly thin evidence and self-serving statements. Rather, the onus should be on OpenCommerce to secure records that would tend to prove that the accounts in question should not be subject to the judgment in this case; records that are in the possession, custody, and control of OpenCommerce itself, or PayPal, but not Plaintiff. Rather than undertake these actions, OpenCommerce has resorted to making wildly misleading statements and pointing the finger at Plaintiff as the cause of its perceived wrong. Such actions seriously call into question OpenCommerce's motivation and reliability.

**D. OpenCommerce Fails to Demonstrate Why the Accused Accounts Should be Released**

OpenCommerce argues that it "readily provided Plaintiff with details regarding DarkHorseDesigns' total sales". Dkt. 90-1, ¶19. Yet from the time that OpenCommerce contacted Plaintiff in December 2022, to date, OpenCommerce has not provided Plaintiff or this Court with

any documentary evidence to demonstrate why the '193 and '736 Accounts should be released.

It is true that OpenCommerce provided what appears to be the current account balance for the DHD2 account, but such documentation is problematic and does not demonstrate what OpenCommerce purports it to prove: that the DHD2's ShopBase account is connected with the liable Defaulting Defendant *and not* the accounts in question. Dkt. 90-1, p.23. **First**, such documentation does not contain any markers of authenticity aside from the self-interested declaration of OpenCommerce's CEO. Dkt. 90-1, ¶19. **Second**, OpenCommerce claims that the DHD2 account is connected with the website http://www.mrjoegomez.com (*see* Dkt. 90, p.5) and email address tungadv0706@gmail.com (*see* Dkt. 90-1, p.23) but neither the website or email address are listed on either Account List provided by PayPal. *See* Exhibits A, H. **Third**, such evidence does not clarify whether Defaulting Defendant darkhorsedesigns and DHD2 are the same entity, different entities, and/or operate under the same locus of control. As discussed *supra*, online retailers are notorious for creating multiple online stores, aliases, and identities, so it is not unreasonable to believe that **both** the '736 and DHD2 accounts are connected to the same Defaulting Defendant, which would not justify the Court setting aside its Order.

Further, OpenCommerce did not provide any accounting of sales, aside from the number of sales, linked to the DHD2 account. Nor did it provide evidence to demonstrate it froze the DHD2 account when it was first notified of this proceeding in December 2021. Dkt. 90-1, ¶10; *cf*. Dkt. 90-1, ¶5 (stating, "Importantly, each seller who signs up for a ShopBase account agrees to OpenCommerce's terms of service, which expressly prohibit the sale of products that infringe on others' trademark, copyright, and other intellectual property rights."); *Id*. at ¶6 (stating, "OpenCommerce also removes infringing content and bans users when it receives notice of potential infringement through other means, including but not limited to, emails, cease and desist letters, takedown requests, and communications through counsel."). This lack of evidence and apparent failure to freeze the DHD2 account, indicate that OpenCommerce is not providing a full and transparent recitation of the relevant facts.

E. **OpenCommerce Fails to Provide Necessary Identifying Information for the Accounts in Question and the Information it Does Provide is Inconsistent with the Records Produced by PayPal**

It would be irresponsible for Plaintiff to request that PayPal release the "OpenCommerce[] PayPal Accounts" given the void of reliable documentary evidence and identifying information provided by OpenCommerce. In its communications with Plaintiff, OpenCommerce demanded that it's "PayPal accounts" be unfrozen. *See* Exhibit K. The only identifying information OpenCommerce provided to Plaintiff's former counsel was that the accounts in question are associated with the Accused Email Addresses. *Id.* OpenCommerce did not provide any account numbers or other identifying information, information that is readily within OpenCommerce's possession, custody, and control. OpenCommerce provides even less identifying information in its Motion, merely stating, that it "uses certain PayPal accounts" to operate its business. Dkt. 90, p.3; *see also id.* ("PayPal accounts"; "The PayPal Accounts").

The only additional information it provides in the Motion is entirely inconsistent with the records provided by PayPal in connection with the '736 and '193 Accounts, making it nearly impossible to even verify if they are the accounts in question. OpenCommerce declares that "the accounts at issue currently contain $447,288.59 and $55,936.89, respectively. Together, they contain $503,225.48." Dkt. 90-1, ¶12[4]. Open Commerce also declares that such accounts are currently frozen by PayPal pursuant to the Court's Order. Dkt. 90-1, ¶16. Plaintiff's records, however, indicate that as of December 1, 2022, the '736 Account, which is linked to Defaulting Defendant darkhorsedesigns had a balance of $692,670.45 USD, and a total balance of $799,101.14, including all currencies, and that the '193 Account, which is linked to Defaulting Defendant customeizer, had a balance of $16,091.35 USD and $16,468.93 including all currencies. *See* Exhibits I, J. The total balance of the '193 and '736 Accounts in USD is $709,139.38, ***this is a difference of over $200,000.*** Given the account freeze of which OpenCommerce complains, these differences indicate that the '193 and '736 Accounts may not even be those claimed to be at

---

[4] OpenCommerce does not provide any documentary evidence to support these claims.

issue by OpenCommerce. Plaintiff, however, is unable to locate any other Defendant Accounts associated with the Accused Email Addresses. And because OpenCommerce has not provided any other identifying information concerning the accounts in question, and considering wildly inconsistent statements concerning the same, the drastic relief requested by OpenCommerce is cause for serious concern.

In addition to its inconsistent and vague statements, OpenCommerce makes several misleading allegations. For example, Open Commerce stated, " . . . Plaintiff continued to uphold the wrongful freeze on OpenCommerce's PayPal Accounts, without explaining the basis for doing so, and refused to confer in good faith." Dkt. 90-1, ¶20. *First*, Plaintiff is not upholding any freeze on OpenCommerce's accounts. PayPal is the sole entity charged with implementing the freeze, as the result of this Court's Order. Failing to implement the freeze would result in PayPal violating the Order. It would also be an encroachment on the Court's power for Plaintiff to demand that PayPal release the accounts in question despite a valid Court Order. *Second*, Plaintiff did state its basis for the hold, a fact that OpenCommerce admits. *See* Dkt. 90-1, ¶22 ("Plaintiff responded by stating that they were "investigating the matter" and were "operating based on the information provided by PayPal.""). *Third and finally*, in addition to communications by email, Plaintiff conferred with counsel for OpenCommerce, by phone on *at least* December 12, 2022. Richmond Decl., ¶16; *see also* Dkt. 90-1, p.19 (counsel for OpenCommercs stating, "Thanks for your time on the phone yesterday."). Counsel discussed the reasons for the hold and stated that it was conducting an investigation. *Id.*

### F. OpenCommerce Wrongly Claims that Plaintiff has Misapplied the Order

OpenCommerce does not deny liability for infringement of Plaintiff's valuable trademarks. Instead, OpenCommerce argues that Plaintiff has misapplied the Order "by the mere fact that it has frozen $500,000 of OpenCommerce's assets." This is a blatant misstatement of the facts. To be clear, Plaintiff is not the entity in control of implementing the Order. As stated above, PayPal – as the third party payment platform – is the sole entity charged with implementing the Order in connection with the accounts in question. Plaintiff served the Order on PayPal on November 21,

2022. *See* Exhibit F. The Order clearly and appropriately entitles Plaintiff to damages of up to $350,000 per defendant. *Id*. It is PayPal, not Plaintiff, that froze the accounts in question in their entirety. Thus, it appears OpenCommerce's issue is with PayPal, not Plaintiff.

OpenCommerce also argues that the Order is misapplied because OpenCommerce is not listed as a Defaulting Defendant. As discussed *supra*, Plaintiff is operating based on the information provided by PayPal as the result of Court ordered discovery. Dkt. 14. Such discovery linked Defaulting Defendants darkhorsedesigns and customeizer to the '736 and '193 Accounts, respectively. Plaintiff is entitled to the relief granted by the Court with respect to such accounts. If OpenCommerce takes issue with the documentation provided by PayPal, it should address the issue with PayPal directly, rather than attempt to circumvent the legal process by attempting to harass Plaintiff into complying with its unsubstantiated demands, despite clear and warranted relief granted to Plaintiff by this Court.

Finally, much of OpenComerce's argument relies on the premise that "Plaintiff previously acknowledged OpenCommerce's limited role as a platform, and not an infringer, when it agreed to release its PayPal Accounts from the impact of the TRO." Dkt. 90, p.7. While this may be true, the purported December 2021 release was granted by Plaintiff's former counsel in connection with a TRO. Plaintiff's former counsel appears to have taken OpenCommerce at their word and did not request any documentation to support its claim. Plaintiff's current counsel has simply requested documentation to support OpenCommerce's claims, which is not a controversial ask and one that should be easy to satisfy given OpenCommerce has possession, custody, and control of the relevant records. To date, OpenCommerce has refused to provide this information or the basis for its refusal to do so. Additionally, Plaintiff does not believe it holds the appropriate authority to demand PayPal release the accounts in question in light of the Order.

### G. OpenCommerce Provides no Basis to Support its Request for Fees

An entity is not entitled to attorneys' fees and costs simply because it is unhappy that it must follow proper legal procedures when attempting to overturn a court-ordered judgment. For all of the reasons discussed above, OpenCommerce's claim for fees is inappropriate and should

denied.

## IV. CONCLUSION

Pursuant to the foregoing it is apparent that OpenCommerces claims concerning the accounts in question are unsubstantiated, inconsistent, and vague, such that the Motion should be denied.

Dated: February 2, 2023

/s/ Marie E. Richmond
Marie E. Richmond (*pro hac vice*)
LOZA & LOZA LLP
305 N. Second Ave., #127
Upland, CA 91786
Email: marie.richmond@lozaip.com

*Attorneys for Expeditee, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

By: /s/ Marie E. Richmond